Jerold Oshinsky
Michael J. Bowe
Jeffrey Ephraim Glatt
**KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP**
1633 Broadway
New York, New York 10019
Phone: (212) 506-1700
joshinsky@kasowitz.com
mbowe@kasowitz.com
jglatt@kasowitz.com
*Attorneys for Plaintiffs, Robert S. Abrams and
   Robert S. Abrams Living Trust*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
ROBERT S. ABRAMS and ROBERT S.                          :
ABRAMS LIVING TRUST,                                    :   Index No: 16-cv-4886 (WHP)(AJP)
                                                        :
           Plaintiffs,                                  :   **SECOND AMENDED
                                                        :   COMPLAINT**
    - against -                                         :
                                                        :   (JURY TRIAL DEMANDED)
RSUI INDEMNITY COMPANY,                                 :
                                                        :
           Defendant.                                   :
------------------------------------------------------- x

Plaintiffs Robert S. Abrams ("Abrams") and the Robert S. Abrams Living Trust (the "Trust," collectively, with Abrams, "Plaintiffs" or the "Abrams Parties") hereby file this second amended complaint for breach of contract and a declaratory judgment against its insurance company RSUI Indemnity Company ("RSUI" or "Defendant"), and allege as follows:

**NATURE OF THE ACTION**

1. This is an insurance coverage action seeking damages because of RSUI's breach of a directors and officers liability insurance policy. RSUI wrongfully has refused to pay for reasonable pre-notice defense costs in a lawsuit filed against the Abrams Parties regarding

1

allegations relating to Abrams' conduct in an underlying lawsuit as Manager and assignee of claims against Abrams' former company.  There is thus a justiciable dispute between the parties regarding insurance coverage for pre-notice defense costs, with the current amount in controversy exceeding $1.5 million dollars.

2. CV Holdings, LLC ("CVH" or the "Company") purchased insurance coverage from Defendant under a claims-made policy for an initial period of August 11, 2014 through August 11, 2015.  Thereafter, CVH exercised its option under the policy's Discovery Period Election Endorsement and purchased a Discovery Period that extended the policy period for six years, through January 29, 2021.  The Discovery Period overlapped with the underlying policy period, and there was no gap in coverage.  While this policy was in effect, the Abrams Parties were covered for claims relating to the sale of CVH, as explained below.

3. Despite receiving notice of the complaint as amended against the Abrams Parties during the policy period, RSUI failed and refused to comply fully with its defense and coverage obligations as extended, as the Abrams Parties have accrued reasonable pre-notice defense costs that should be paid by RSUI.  The Abrams Parties thus file this Second Amended Complaint for breach of contract to recover losses resulting from RSUI's refusal to fully honor its contractual obligations, and a declaratory judgment establishing that RSUI has an obligation to cover all reasonable pre-notice defense costs.

## THE PARTIES

4. Plaintiff Abrams, a citizen of New York State, is a highly regarded business executive and investor.  During all relevant times, he was an officer and director, as well as the Managing Member, of insured entity CVH Holdings LLC ("CVH" or the "Company") and also the President of a company called SiO2 Medical Products ("SiO2").

5\. Plaintiff Trust was created by a Trust Agreement executed in New York, as amended and restated, between Abrams, as Grantor, and Abrams, as Trustee. By valid transfer, Abrams, CVH's majority shareholder, transferred all of his Class A Common Interests in CVH to the Trust.

6\. The Abrams Parties are insured parties or third-party beneficiaries under an insurance policy issued by Defendant to CVH.

7\. Defendant RSUI is an insurance company incorporated in New Hampshire, and with a principal place of business in Atlanta, Georgia. RSUI writes insurance policies for its parent company, RSUI Group, Inc., an underwriter of wholesale specialty insurance. RSUI is a wholly-owned subsidiary of Alleghany Corporation, which is headquartered in New York. RSUI is licensed to conduct and does conduct business in the State of New York, and upon information and belief, RSUI maintains an office located at 7 Times Square Tower, New York, New York.

## JURISDICTION AND VENUE

8\. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship between Plaintiffs and Defendant and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9\. Plaintiffs' prayer for declaratory judgment is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

10\. On information and belief, this Court has personal jurisdiction over Defendant by virtue of Defendant's business activities within the State of New York and this Judicial District. On information and belief, by way of example and without limitation, RSUI has offered for sale insurance policies within the State of New York and this Judicial District, and is wholly owned by a corporation headquartered in New York, maintaining an office in New York.

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§1391(b) because a substantial part of the events giving rise to this claim occurred in New York.  The action giving rise to Plaintiffs' claim for coverage was filed in New York State Supreme Court, in the County of New York.

## THE UNDERLYING CLAIMS

12.     CVH is a company that was founded by Abrams in 1998.  The Company holds interests in multiple operating subsidiaries, and is in the business of designing, developing, marketing, and manufacturing polymer products such as packaging, insulated cups, medical vials and sterile containers.

13.     After being founded by Abrams, the Company had several investing members, but at all times relevant to this action, Abrams was the Manager of CVH.  Abrams managed the Company to great financial success, and, in or around 2010, CVH was presented with an offer to purchase assets of certain of the Company's subsidiaries, which represented substantial profits to all investors of the Company.  However, one member of the Company, Southern Advanced Materials, LLC ("SAM"), substantially obstructed this sale.  Through Abrams' efforts, however, in late 2014, Abrams had negotiated for the sale of the Company's equity interests to French corporation Wendel S.A. ("Wendel") for $360 million.  At the time that Abrams negotiated for the sale of the Company, the Trust held the Company's Class A Common shares.

14.     All members of the Company, except for SAM, ultimately agreed to the sale in late 2014.  But again, SAM attempted to obstruct the sale of the Company, seeking to obtain further monetary concessions.   SAM was not entitled to monetary concessions under any agreement.  Thus, in order to close the deal, Abrams was forced to execute a retained claims agreement solely with SAM that permitted SAM to reserve certain claims (the "Retained Claims Agreement").

Upon the Retained Claims Agreement's execution, Abrams was able to close the deal, and finalize the sale of the Company to Wendel.

15. Subsequent to the sale to Wendel, SAM filed suit in the Supreme Court of the State of New York on March 13, 2015. In that action, entitled *Southern Advanced Materials, LLC v. Robert S. Abrams, and John Does 1-10*, Index No. 650773-2015 (the "SAM Action"), SAM initiated claims against Abrams for breach of contract, breach of guarantee, breach of fiduciary duty, and fraud. These claims related to Abrams' purported conduct as Manager of CVH and also as President of SiO2, and as assignee of SAM's claims against CVH pursuant to the Retained Claims Agreement.

16. On or about July 1, 2015, SAM amended its complaint, adding as defendants Abrams, in his capacity as trustee for the Trust, and the Trust itself. Again the allegations centered on the purported conduct of Abrams, including his conduct as Manager of CVH and President of SiO2. SAM sought tens of millions of dollars to recover for proceeds from the sale of the Company as purported obligations owed to SAM by virtue of its investment in the Company.

17. SAM amended its complaint a second time, filing its Second Amended Complaint, currently the operative pleading in that action, on or about October 19, 2015. SAM's Second Amended Complaint contains new claims for damages for breach of contract and breach of fiduciary duty. As part of the bases for its allegations, SAM cites Abrams' conduct as Manager and assignee of the claims against CVH during late 2014, while he attempted to structure a transaction with Wendel, for the benefit of the Company's investors.

18. On September 29, 2016, the Supreme Court of the State of New York issued a decision ("SAM Action Decision") dismissing six out of the eight claims and counterclaims

5

against Abrams in the SAM Action.  One of the remaining claims is the breach of fiduciary duty claim.

19. On November 7, 2016, Abrams filed a notice of appeal, appealing one aspect of the SAM Action Decision to the Appellate Division, First Department.

20. Abrams has at all times aggressively defended against the SAM Action, and has incurred only reasonable defense costs in so defending.

## THE POLICY

21. On or about August 14, 2014, RSUI sold a New York Directors and Officers Liability Insurance Policy to CVH, policy number HP658628 (the "Policy"), as a renewal of policy number NHP653219.  The Policy had an initial effective period that covered the policy period from August 11, 2014 through August 11, 2015 (the "Initial Policy Period").

22. CVH exercised its option under the Policy's Discovery Period Election Endorsement and purchased a discovery period of six years (the "Discovery Period"), with effective dates January 29, 2015 through January 29, 2021.  The extended policy period allowed Abrams, as an Insured Person, to provide notice during the Discovery Period of claims first made during the Discovery Period for a Wrongful Act occurring prior to the commencement of the Discovery Period.

23. The Policy provided $3 million in insurance coverage for the Initial Policy Period, as well as the Discovery Period.  Abrams has not made any claims for coverage aside from seeking payment of his defense fees and liability costs, if any, relating to the defense against SAM's litigation in the New York State Supreme Court.

24. The Policy sets forth various standard insuring agreements to pay on behalf of the Insured Person, or the Company, where the Company indemnifies the insured person, for defense costs, including reasonable pre-notice defense costs, and liability losses.

25. The Policy defines "Insured Person" as "[a]ny past, present or future director, officer, or Employee**,** management committee members or members of the Board of Managers of [CVH]."  By virtue of his role as Manager of CVH during all relevant times, Abrams is and was an Insured Person under the Policy.  Abrams also is an Insured Person under an insurance policy issued to SiO2.

26. The Policy sets forth an insuring agreement "[w]ith the Insured Person that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with SECTION V. — CONDITIONS, C. Notice of Claim or Circumstance of this policy, the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is legally obligated to pay, except and to the extent that the Insured Organization is required or permitted to indemnify such Insured Persons."

27. The Policy defines "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged Employment Practices Wrongful Act, by: An Insured Person acting in his or her capacity as such and on behalf of the Insured Organization or any matter claimed against them solely by reason of their status as an Insured Person."

28. The Policy defines "Loss" as "damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses."

29. The Policy contains an express condition, entitled "Duty to Defend," that states "[i]t shall be the right and duty of the Insurer to defend any Claim against the Insured for which coverage applies under this policy."

30. Each edition of SAM's Complaint and Amended Complaints was filed during the Discovery Period, and contain allegations that Abrams and the Trust committed Wrongful Acts in late 2014, which is prior to the Discovery Period.

## THE REQUESTS FOR COVERAGE

31. On or about April 1, 2016, Abrams wrote to RSUI's insurance producer, Michael J. Fischer, Executive Vice President at Aon Risk Solutions, requesting that RSUI be notified of the claims against Abrams, and requesting coverage for legal fees incurred in connection with Abrams' defense, as well as coverage for any future liability that might result from SAM's claims.

32. On or about April 7, 2016, Abrams received RSUI's acknowledgement of the notice of claim relating to the SAM Action. Subsequent to this acknowledgment, counsel for Abrams communicated with counsel for RSUI on multiple occasions, including by email, letter, and telephone conference, each time requesting that RSUI acknowledge that it would be honoring its contractual commitments under the Policy.

## RSUI'S REFUSAL TO DEFEND

33. Under New York Codes, Rules and Regulations Title 11, Section 216.6(c), RSUI was required to accept or deny coverage within 15 days of notice of the claim. However, RSUI failed to meet this requirement when it denied coverage on May 17, 2016, which was well beyond the 15-day limit.

8

34. On May 17, 2016, RSUI sent a letter to the Abrams Parties (the "May 17 Letter"), belatedly and untimely denying coverage for the SAM Action. The May 17 letter did not contest that SAM had made allegations implicating Abrams in his capacity as an Insured Person, that SAM's allegations concerned conduct that occurred prior to the Discovery Period, that SAM's claims were first-made within the Discovery Period, or that Abrams had provided notice within the Discovery Period. Instead, RSUI denied coverage solely on the grounds of purported late notice.

35. Despite intervening communications from Abrams' counsel, counsel for RSUI reiterated its denial of coverage, sending another belated and untimely letter on June 8, 2016.

36. The parties engaged in extensive discussions regarding RSUI's denial. RSUI's late notice defense and post-notice defense costs are no longer in issue between the parties.

37. RSUI continues to deny its obligations under the Policy to pay reasonable pre-notice defense costs. The Abrams Parties believe that the resolution of this issue will resolve this lawsuit.

38. RSUI has not, and cannot, demonstrate that any provision in the Policy permits RSUI to avoid its defense obligations by refusing to pay pre-notice defense costs. RSUI has suffered no prejudice.

## FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT

39. Plaintiffs incorporate by reference the allegations contained within paragraphs 1 through 38 of their Second Amended Complaint as if fully set forth herein.

40. Pursuant to the terms and conditions of the Policy and applicable law, RSUI is required to provide the Abrams Parties with a defense to the SAM Action beginning from the time that the SAM Action was filed.

41. RSUI has materially breached the Policy by, among other things, failing and refusing to provide the Abrams Parties with a full defense, including payment of reasonable pre-notice defense fees for the SAM Action.

42. The Abrams Parties have performed all their obligations under the Policy and any and all conditions precedent to the Abrams Parties' rights under the Policy with respect to the SAM Action, if any, have been satisfied or waived.

43. RSUI has breached its contract by refusing to pay for the Abrams Parties' full defense, including the reasonable pre-notice defense of the SAM Action.

## SECOND CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT

44. Plaintiffs incorporate by reference the allegations contained within paragraphs 1 through 43 of their Second Amended Complaint as if fully set forth herein.

45. Pursuant to the terms and conditions of the Policy and applicable law, RSUI is required to provide the Abrams Parties with a full defense, which includes paying for the Abrams Parties' reasonable pre-notice defense costs, in the SAM Action.

46. The Abrams Parties have performed all their obligations under the Policy and any and all conditions precedent to the Abrams Parties' rights under the Policy with respect to the SAM Action, if any, have been satisfied or waived.

47. RSUI has materially breached the Policy by, among other things, refusing to provide the Abrams Parties with a full defense, which includes paying for reasonable pre-notice defense costs, for claims asserted in the SAM Litigation.

48. Because the Abrams Parties have asserted rights under an existing and valid contract that requires RSUI to furnish a full legal defense and pay for all defense costs, including reasonable pre-notice defense costs, incurred in defending against the SAM Action, and because

RSUI has denied those obligations under that contract, an actual case or controversy exists and a declaratory judgment setting forth the parties' rights and other legal obligations is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor against Defendant as follows:

   a. holding Defendant liable for breaching the Policy by failing and refusing to provide Plaintiffs a full defense, including the payment of reasonable pre-notice defense costs, for the SAM Action;

   b. awarding Plaintiffs damages including pre-judgment and post-judgment interest and attorneys fees resulting from Defendant's breach of contract, in an amount to be determined at trial;

   c. holding and declaring that Defendant is liable for a full defense, including all reasonable pre-notice defense costs, in the SAM Action; and

   d. granting Plaintiffs such other further and different relief as is just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

Dated:  December 9, 2016

                                          By:   */s/ Jerold Oshinsky*
                                                Jerold Oshinsky
                                                Michael J. Bowe
                                                Jeffrey Ephraim Glatt
                                                **KASOWITZ, BENSON,**
                                                    **TORRES & FRIEDMAN LLP**
                                                1633 Broadway
                                                New York, New York 10019
                                                Phone: (212) 506-1700
                                                joshinsky@kasowitz.com
                                                mbowe@kasowitz.com
                                                jglatt@kasowitz.com
                                                *Attorneys for Plaintiffs Robert S. Abrams*
                                                    *and Robert S. Abrams Living Trust*