**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
───────────────────────────────

**ROBERT S. ABRAMS and ROBERT S. ABRAMS LIVING TRUST,**

        **Plaintiffs,**

    - against -

**RSUI IDEMNITY COMPANY,**

        **Defendant.**

**16-cv-4886 (JGK)**

**OPINION AND ORDER**

───────────────────────────────

**JOHN G. KOELTL, District Judge:**

These are cross-motions for summary judgment in a dispute between the plaintiffs, Robert S. Abrams ("Abrams") and Robert S. Abrams Living Trust (the "Trust"), and the defendant, RSUI Indemnity Company ("RSUI"). The dispute concerns whether, pursuant to a directors and officers liability insurance policy (the "D&O Policy"), RSUI is required to pay for the plaintiffs' defense expenses incurred before Abrams notified the defendant that a lawsuit had been brought against him (the "pre-notice defense expenses").

The plaintiffs move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. RSUI cross-moves for summary judgment, seeking dismissal of the plaintiffs' current Complaint.

**I.**

The following facts are undisputed, unless otherwise noted.

Abrams is a citizen of New York; Abrams is the sole grantor and trustee of the Trust. (Second Am. Compl. ¶¶ 4-5; Docket No. 65 (letter to the Court).) During all relevant times, Abrams was an officer and director, as well as the managing member of CVH Holdings LLC ("CVH"). (Plaintiffs' Rule 56.1 Statement of Material Facts ("Pls.' 56.1 Stmt.") ¶ 1; Defendant's Rule 56.1 Statement of Material Facts ("Def.'s 56.1 Stmt.") ¶ 3.) RSUI is a New Hampshire corporation with its principle place of business in Atlanta, Georgia. (Def.'s Answer to Second Am. Compl. ¶ 8.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

In August 2014, CVH purchased insurance coverage from RSUI under a $3 million claims-made-and-reported D&O Policy, Policy No. HP653628, for the policy period of August 11, 2014 through August 11, 2015. (Pls.' 56.1 Stmt. ¶¶ 4-5; Def.'s 56.1 Stmt. ¶ 1.) The plaintiffs are insured parties or third-party beneficiaries under the D&O Policy. (Pls.' 56.1 Stmt. ¶ 4.) On January 29, 2015, CVH purchased an additional insurance policy from the defendant, which updated some of the terms of the D&O Policy and insured CVH through January 29, 2021 for claims

stemming from conduct occurring prior to January 29, 2015.
(Pls.' 56.1 Stmt. ¶ 7; Def.'s 56.1 Stmt. ¶ 2.)

The D&O Policy provides that the defendant will pay for the insureds' loss "if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period . . .** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy . . . ." (D&O Policy § I(A) (available at Docket. No. 41-1) at 37 (emphasis in original).) The D&O Policy's "Notice of Claim or Circumstance" provision provides that:

> If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** (via certified mail at the address shown on the Declarations Page), as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than thirty (30) days after either the expiration date or any earlier cancellation date of this policy.
>
> (D&O Policy § V(C)(1) (emphasis in original).)

In addition, the D&O Policy's "Duty to Defend" provision provides that:

> No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld. Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.
>
> (D&O Policy § V(A) (emphasis in original).)

3

The D&O Policy defines "Defense Expenses" as:

> [R]easonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom.
>
> (D&O Policy § III(C) (emphasis in original).)

The D&O Policy also contains a "Governing Law Clause," which states that the D&O Policy should be construed in accordance with the laws of the state in which the insured organization is incorporated. (D&O Policy § V(S).) Because CVH was incorporated under the laws of Delaware, the parties do not dispute that the D&O Policy is interpreted in accordance with Delaware law. (Def.'s Mem. of Law at 3; see also Pls.' Mem. of Law at 8 n.4.)

On March 13, 2015, Southern Advanced Materials ("SAM"), an investor in CVH, filed a suit against the plaintiffs in the Supreme Court of the State of New York, alleging that Abrams breached various contractual agreements, and that Abrams breached his fiduciary duty as manager of CVH (the "SAM Action"). (Pls.' 56.1 Stmt. ¶¶ 14-17; Def.'s 56.1 Stmt. ¶¶ 6-7.)

More than a year later, in April of 2016, the plaintiffs sent a letter of notice regarding the SAM Action to AON Risk Solutions ("AON"), who then forwarded the letter to RSUI. (Pls.' 56.1 Stmt. ¶ 21; Defendant's Counterstatement in Opposition to the Plaintiffs' 56.1 Stmt. ("Def.'s Counterst.") ¶ 21.) The plaintiffs demanded that the defendant reimburse the plaintiffs for defense expenses incurred prior to notice and provided

4

attorney invoices to RSUI totaling more than $3.5 million. (Def.'s 56.1 Stmt. ¶ 18, Plaintiffs' Counterstatement in Opposition to the Defendant's 56.1 Statement ("Pls.' Counterst.") ¶ 18.) The aggregate limit on the policy, including defense expenses, is $3 million. (See D&O Policy Item 3, § V(B)(1).)

On May 17, 2015, RSUI denied all coverage, including for all defense expenses pertaining to the SAM Action, because notice to the defendant was late. (Pls.' 56.1 Stmt. ¶ 22; Def.'s 56.1 Stmt. ¶ 11.)

On June 23, 2016, the plaintiffs brought this action against RSUI alleging that the defendant breached the D&O Policy. (Pls.' 56.1 Stmt. ¶ 25.) The parties have since resolved some of the issues pertaining to RSUI's late notice defense. (Pls.' 56.1 Stmt. ¶ 32; Def.'s 56.1 Stmt. ¶ 13.) On December 9, 2016, the plaintiffs filed a Second Amended Complaint, claiming that RSUI breached the D&O Policy by refusing to pay for the plaintiffs' pre-notice defense expenses incurred during the SAM Action. (Pls.' 56.1 Stmt. ¶¶ 35-36; Def.'s 56.1 Stmt. ¶ 18.) RSUI maintains that because Abrams did not notify RSUI of the SAM Action in accordance with the D&O Policy, the defendant is not obligated to pay for any defense expenses incurred by the plaintiffs prior to notification. Both parties now move for summary judgment on the claim.

## II.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases). If there are cross-motions for summary judgment, the Court must assess each of the motions and, drawing all reasonable inferences against the party whose motion is under consideration, determine whether either party is entitled to judgment as a matter of law. Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010); see also Two Farms, Inc. v. Greenwich Ins. Co., 993 F. Supp. 2d 353, 358 (S.D.N.Y. Jan. 7, 2014).

**III.**

The plaintiffs contend that the defendant is liable for pre-notice defense expenses because the D&O Policy does not explicitly disclaim pre-notice defense expenses and that RSUI should be required to show prejudice before denying the plaintiffs' claim for pre-notice defense expenses.

Under Delaware law, "the interpretation of contractual language, including that of insurance policies is a question of law." O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 286 (Del. 2001). An unambiguous contract is construed according to its terms. See Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992) ("It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. Only when there are ambiguities may a court look to collateral circumstances." (internal citations omitted)); see also Picture Patents, LLC v. Aeropostale, Inc., 788 F. Supp. 2d 127, 137 (S.D.N.Y. Apr. 18, 2011). "Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning." Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992). "Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it." Id. When an insurance contract's language is clear and unequivocal, a party will be bound by its plain meaning, because creating an

ambiguity where none exists could in effect create a new contract with rights, liabilities, and duties to which the parties had not assented. Id. at 1195-96. "Contracts are to be interpreted in a way that does not render any provisions illusory or meaningless." O'Brien, 785 A.2d at 287 (citation and quotation marks omitted).[1]

The plaintiffs argue that the D&O policy issued by the defendant does not have a no-voluntary-payments provision disclaiming coverage for payments voluntarily incurred, emphasizing that the terms "voluntary" or "voluntarily" do not appear in the policy. But the substance of the policy plainly requires the plaintiffs to notify the defendant before the plaintiffs can incur any reimbursable defense expenses. The substantive provisions of the policy preclude coverage for defense costs voluntary incurred prior to notice to the insurer. The D&O policy explicitly provides that "[n]o **Insured** may incur any **Defense Expenses** . . . without the **Insurer's** prior written consent," and that "[a]ny **Defense Expenses** incurred . . . without the prior written consent of the **Insurer** will not be covered under this policy." (D&O Policy § V(A) (emphasis in original).) Moreover, the D&O Policy explicitly states that

---

[1] Despite agreeing that Delaware law controls, both parties also include arguments under New York law. Under both Delaware and New York law, unambiguous contracts are interpreted in accordance with their plain meaning. See Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co. Ltd., 339 F.3d 101, 109 (2d Cir. 2003).

9

notice is a "condition precedent to the **Insurer's** obligation to pay" and unambiguously defines defense expenses as "expenses incurred, with the **Insurer's** consent." (D&O Policy §§ V(C)(1) & III(C)(emphasis in original).) The clear import of these repeated and unambiguous references to consent prior to coverage is that any expenses incurred by the insureds prior to providing notice would be voluntarily paid by the insureds and thus properly disclaimed by the defendant. Accordingly, the argument that the policy does not contain a no-voluntary-payments provision is without merit.[2]

Here, it is plain that the plaintiffs failed to comply with the unambiguous terms of the policy when they waited for over a year and incurred over $3.5 million in legal fees before notifying the defendant of the SAM Action. Nevertheless, the plaintiffs assert that Delaware law would likely require an insurer to show prejudice before it could prevent recovery of pre-notice defense expenses. The argument is without merit.

---

[2] The plain terms of the policy make this case distinguishable from Consolidated Edison Co. of New York, Inc. v. Lexington Ins. Co., No. 14-CIV-6547 (CM)(JLC), 2015 WL 4611206, at *10 (S.D.N.Y. July 30, 2015). The policy at issue in Consolidated Edison did not appear to have a no-voluntary-payments provision; the court affirmatively stated that it reviewed the policy and could not locate a no-voluntary-payments provision and that the parties could not locate one either. See id. It should also be noted that the policy at issue in Consolidated Edison was examined pursuant to the laws of New York rather than Delaware. See id.

A Delaware court has previously interpreted a largely similar policy provision and concluded that an insurer "would not have been required to provide a defense to" the insured until the insured provided notice to the insurer. Home Ins. Co. v. American Ins. Group, No. CIV.A. 97C-04-024 (WLW), 2003 WL 22683008, at *4-5 (Del. Super. Ct. Oct. 30, 2003); compare id. at *4 ("No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent") with D&O Policy § V(A) (stating that "[n]o Insured may incur any Defense Expenses . . . without the Insurer's prior written consent," and that "[a]ny Defense Expenses incurred . . . without the prior written consent of the Insurer will not be covered under this policy" (emphasis omitted).) The Home Ins. Co. court's conclusion is consistent with the "general rule" that "an insurer has no duty to defend until it receives notice of a claim and thus is not responsible for pre-tender defense costs. . . . Pre-tender defense costs consistently have been held not recoverable under an insurance clause prohibiting voluntary payments made without the consent of the insurer. If the insured makes no demand for a defense, there is no duty to defend and pre-tender defense costs are lawfully precluded by the no-voluntary payment provision." 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 5.01[c], at 332-33 (18th ed. 2016) (citations and quotation marks omitted).

In concluding that the insurer was only obligated to pay for defense expenses after notice -- and therefore had no obligation to pay for pre-notice defense expenses -- the court in <u>Home Ins. Co.</u> did not examine whether the insurer was prejudiced by the delayed notice. <u>See</u> <u>generally</u>, 2003 WL 22683008 at *4-5. In refraining from any inquiry into whether the insurer was prejudiced, the court's approach is consistent with the principle that "an insurer is not liable for the pre-tender costs of defense incurred by the insured irrespective of the existence of prejudice." 14 <u>Couch on Insurance</u> § 200:34 (3d. ed.) (West 2017) (describing the effect of delayed notice and noting that "[u]nless the insurance contract provides otherwise, an insurer is only responsible for defense costs incurred after tender of the suit").

Moreover, Delaware courts -- in interpreting policy provisions pursuant to the principles of contractual interpretation of other jurisdictions -- have enforced without issue the plain terms of insurance policies requiring insurer consent prior to the payment of defense costs. <u>See, e.g.</u>, <u>In re Viking Pump, Inc.</u>, 148 A.3d 633, 675 (Del. 2016) (applying New York law and concluding that insurer was obligated to pay defense costs "provided the insurer consents" because policy provisions "contemplate the payment of defense costs contingent upon the consent of the [insurer]" (quotation marks omitted)); <u>Mine Safety Appliances Co. v. AIU Ins. Co.</u>, No. N10C-07-241 (MMJ), 2014 WL

605490, at *4-5 (Del. Super. Ct. Jan. 21, 2014) (applying Pennsylvania law and determining that a policy was unambiguous to "only require [the insurer] to pay the defense costs to which it consents"); Liggett Grp. Inc. v. Affiliated FM Ins. Co., No. Civ.A 00C-01-207 (HDR), 2001 WL 1456818, at *4 (Del. Super. Ct. Sept. 12, 2001) (noting that "there is generally no duty to pay pre-tender defense costs" and that "under North Carolina law, an insurer is not obligated to pay for pre-tender defense costs where the policy language itself does not require the insurer to pay such costs and the insurer had no opportunity to control the expenses").

In sum, Delaware law would enforce the plain terms of the D&O Policy, and the plaintiffs' argument that Delaware law would likely require the defendant to show prejudice before disclaiming pre-notice defense expenses is without merit.

The plaintiffs attempt to rely on Medical Depot, Inc., v. RSUI Indemnity Co., No. N15C-04-133 (EMD), 2016 WL 5539879, at *12-13 (Del. Super. Ct. Sept. 29, 2016), where the court concluded that an insurer must show prejudice from late notice before denying coverage altogether.[3] Id. at *13. Such a

---

[3] The plaintiffs also point to Sun-Times Media Grp., Inc. v. Royal & Sunalliance Ins. Co. of Canada, No. 06C-11-108 (RRC), 2007 WL 1811265, at *13 (Del. Super. Ct. June 20, 2007) and Allstate Ins. Co. v. Fie, No. 03C-02-185 (CLS), 2006 WL 1520088, at *4 (Del. Super. Ct. Mar. 9, 2006), but both cases dealt only with the issue of prejudice with respect to consent-to-settlement provisions, which are not at issue in this case.

13

requirement is understandable because allowing an insurer that was not prejudiced by untimely notice to avoid providing any coverage whatsoever would be a draconian result.  However, it is not draconian to enforce a policy -- like the one at issue here -- that unambiguously states that an insured cannot incur defense costs without the consent of the insurer.  This is especially so when, as here, the plaintiffs waited over a year and incurred over $3.5 million in legal fees prior to giving notice to the defendant as required under the policy.

The plaintiffs claim that there is a "recent trend" in courts finding coverage for pre-notice defense expenses unless the insurer can establish prejudice, relying primarily on Episcopal Church in S.C. v. Church Ins. Co. of Vermont, 53 F. Supp. 3d 816, 830 (D.S.C. 2014) and CH Properties, Inc. v. First Am. Tit. Ins. CO., 43 F. Supp. 3d 83, 97-98 (D.P.R. 2014). But these cases are easily distinguishable.

The court in Episcopal Church applied South Carolina law and made clear that the "[p]laintiff's duty to provide notice of a suit is a covenant under the [p]olicy, not a condition precedent to [the insurer's] duty to defend."  53 F. Supp. 3d at 828; see also id. at 819 (describing the policy, which provided only that "[i]f a claim is made or suit is brought, the insured must: promptly send to [the insurer] copies of all legal papers, demands, and notices").  But the policy at issue in this case

states explicitly that "it shall be a condition precedent to the Insurer's obligation to pay, that the Insured give written notice of such Claim to the Insurer." D&O Policy § V(C)(1)(emphasis omitted). The clear distinction in the language of the policies makes it highly unlikely that a Delaware court applying Delaware law would adopt the reasoning of Episcopal Church in this case.

The plaintiffs' reliance on CH Properties is also misplaced. There, the court acknowledged that it was departing from the "majority view" in requiring an insurer to show prejudice before disclaiming pre-notice defense expenses. 43 F. Supp. 3d at 95-96. There is no indication in any Delaware case that Delaware would adopt the minority view and reject the plain and unambiguous language of the insurance policy in this case.

In sum, this is a case where the "[c]lear and unambiguous language in an insurance policy should be given its ordinary and usual meaning." Rhone-Poulenc Basic Chemicals Co., 616 A.2d at 1195. The policy repeatedly makes clear that any costs incurred without the consent of the defendant are not covered under the policy. And the plaintiffs have failed to establish that Delaware, as a matter of law, would stray from the well-established principle that pre-notice defense expenses are generally not covered, irrespective of prejudice. The defendant is therefore not liable for any defense costs incurred by the

15

plaintiffs prior to being notified of the SAM action and are entitled to judgment as a matter of law.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the plaintiffs' motion for summary judgment is **denied** and the defendant's motion for summary judgement is **granted.** The Clerk is directed to close all pending motions and to enter judgment dismissing this action.

**SO ORDERED.**

**Dated:**    **New York, New York**
          **August 10, 2017**      _____/s/_____
                                               **John G. Koeltl**
                                    **United States District Judge**